# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-460-6 |
| CHAYANNE HERRERA<br>a/k/a "Cito" | : | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

CHAYNNE HERRERA a/k/a "Cito," was an integral member of the drug conspiracy who reported directly to the number one person in the indictment, JOSE ANTONIO MORALESNIEVES. HERRERA was seen and heard regularly stocking one of the DTO's drug stash locations and his name appears on drug ledgers being paid for his loyal service.

On October 22, 2025, a grand jury in the Eastern District of Pennsylvania returned a 41-count indictment charging CHAYENNE HERRERA and 32 other co-defendants running one of Philadelphia's largest and most entrenched fentanyl and cocaine trafficking operations, centered on the 3100 block of Weymouth Street, from 2016 through 2025. Defendant CHAYENNE HERRERA was one of the leaders of this drug trafficking organization (the "Weymouth DTO") and his role was to helped maintain—and ensure ongoing supplies of drugs for—the packaging/stash house used by the DTO for storing cocaine and crack cocaine, located at 3326 Rorer Street, in Philadelphia. Defendant HERRERA was specifically charged with two counts: conspiracy to traffic fentanyl, 500 grams of powder cocaine, and 280 grams of crack cocaine between 2016 and September 2025, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B), (b)(1)(C) (Count One); and possession of 28 grams or more of crack cocaine and of

463 grams of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (b)(1)(C), pertaining to the drugs found in the Rorer Street garage on August 13, 2025.

Due to the significant amount of fentanyl, cocaine, and crack cocaine underlying the charges, a presumption in favor of detention exists pursuant to the Bail Reform Act.   The defendant cannot overcome that presumption here because—as explained in more depth below—the strength of the government's case, the deadly and addictive nature of the drugs the defendant was distributing, the length of the sentence the defendant faces, and a number of factors about the defendant's background, together demonstrate that the defendant presents a risk of flight and danger to the community such that there is no condition or combination of conditions that will reasonably secure the defendant's presence at trial.  In short, the presumption in favor of detention cannot be rebutted and the defendant should be detained for his danger to the community and risk of flight.

## I.    OVERVIEW OF INDICTMENT AND "WEYMOUTH DTO"

In support of this motion, the government makes the following representations and proposed findings of fact:

1.    The 41-count indictment in this case charges defendant CHAYENNE HERRERA along with 32 other co-defendants, with a near decade-long conspiracy to traffic fentanyl, cocaine, and crack cocaine, in Philadelphia, from January 2016 through October 2025. Specifically, defendant CHAYENNE HERRERA and his co-defendants were part of the drug trafficking group that has operated primarily on the 3100 block of Weymouth Street, Philadelphia, termed the "Weymouth DTO."

2.    The 3100 block of Weymouth Street has plagued the City of Philadelphia of years, as it has functioned as what is effectively an open-air drug market that operates 24 hours a

2

day, 365 days a year, where addicts can come to buy fentanyl, cocaine, and crack cocaine, up and down the block.  The Weymouth DTO uses multiple occupied and abandoned houses and lots on the block—as well as trash cans, ground drains, cars, tires, and porches—to store small to medium amounts of drugs in easily-accessible places, so they can be procured for buyers who arrive on the block to make drug transactions.  A photograph of the 3100 block of Weymouth Street, taken on April 30, 2024, which was a day that the DTO was handing out free samples of a new product line, is shown below:



3.      In addition to storing drugs in various locations along the 3100 block of Weymouth for daily sales by street dealers, the Weymouth DTO uses several off-the-block locations to package and store drugs that are delivered to the block through "reups."  Up until August 2025, when the FBI searched both locations, the Weymouth DTO used 6217 Tackawanna Street, in Philadelphia, as a bag-house for fentanyl, and it used a garage at 3326 Rorer Street, in Philadelphia, as a packaging and storage center for crack cocaine.  The Weymouth DTO also uses a particular lot on the block, at 3153 Weymouth Street, as a meeting place, stash location, and location to cook crack cocaine. The location, called the "bunker,"

consists of a drywall structure with a physically connected tent structure, with a door in between that can be opened or closed.

4.      Over the course of the FBI and Philadelphia Police Department's investigations in this case, roughly 3.9 kilograms of fentanyl, 727 grams of crack cocaine, and 3.8 kilograms of powder cocaine were seized by law enforcement, either from controlled buys, arrests on the block, or the execution of search warrants.  But those amounts—arrived at through tallying up one-moment-in-time snapshots, either of drugs transacted with an individual buyer or drugs stored in a location for imminent sale—do not *come close* to representing the enormous quantity of illegal drugs sold by this DTO over the 9-year conspiracy charged.   A conservative estimate, as the evidence underlying the case will show, is that the Weymouth DTO, for the 9-year conspiracy period charged, trafficked roughly 10-18 kilograms of fentanyl and 16-30 kilograms of crack cocaine, to buyers in Philadelphia.

5.      The Weymouth DTO also commits violent assaults, including murders, to maintain control over its drug empire on the 3100 block of Weymouth Street and the surrounding blocks.   The indictment describes assaults committed by defendants in this case, such as on November 7, 2024, when defendants JOSUE ONEILL ORTIZ-BETANCOURT and JONATHAN TORRES, along with Co-Conspirator 12 (now deceased) and another individual, chased a car off the 3100 block of Weymouth and repeatedly shot at the car around the corner, while defendant ELLIOT MATTEI-RODRIGUEZ, a/k/a "Elio," pulled out a firearm, chambered a round, and stood guard on the 3100 block of Weymouth.   On March 16, 2025, defendants JOHN DAVID LOPEZ-BORIA a/k/a "Grande," LUIS WILLIAMS, and Co-Conspirator 17 physically assaulted an individual on the block, as captured on pole camera.  On May 6, 2024, defendant ROMAN ROMAN-MONTANEZ and Co-Conspirator 12, now deceased, dragged an

unknown person across the ground in the direction of the "bunker" at 3153 Weymouth Street, after which Co-Conspirator 12 struck the person with a rod.

6.       Members of the Weymouth DTO routinely possess firearms, either on their persons but more commonly in vehicles, houses, porches, fences, or abandoned lots, that they use to protect their drug stash, drug proceeds, and commit or threaten violent assaults. The indictment charges numerous instances in which Weymouth DTO members possessed firearms either on the block or shortly after leaving the block. To name just a few examples: in January 2019, the DTO stored three loaded firearms inside 3125 Weymouth Street; on August 27, 2019, defendant ANGEL RIOS-VALENTIN left the block with a loaded firearm—following a visit to 3152 Weymouth Street—and was convicted of a federal 922(g) offense; in December 2019, the DTO stashed a Hi-Point, Model 995 semiautomatic rifle, a Sig Sauer 9mm semiautomatic pistol, a Glock 26 9mm semiautomatic handgun, and a Keltec 9mm semiautomatic firearm, all inside of 3162 Weymouth Street; on March 11, 2022, defendant ELLIOT MATTEI-RODRIGUEZ was found in possession of two loaded Glock firearms, shortly after he left 3152 Weymouth Street; on August 2, 2020, defendant ANGEMILL GONZALEZ-CLAUDIO, a/k/a "Angel," a/k/a "Angie," went up to a car on the 3100 block of Weymouth Street, opened the trunk, took out two bags that contained rifles visibly sticking out, and displayed one firearm to males on the street while depositing another firearm inside of a vehicle; in October 2022, defendants ROMAN-MONTANEZ and NANCY RIOS-VALENTIN had four loaded firearms in their residence, of 3152 Weymouth Street, while other DTO members possessed a Draco AK 47, an AR-15, and another loaded handgun, in other locations; just recently on August 13, 2025, defendant LUIS LEVANTE-MEDINA, a/k/a "Diamante," tossed a firearm onto the street as he was trying to evade law enforcement. Also on August 13, 2025, when the FBI and local police searched the

5

DTO's "bunker" at 3153 Weymouth Street, they recovered numerous rounds of loose ammunition of various calibers, including AK 47 rounds.

7.    In addition, Weymouth DTO members—in order to promote the reputation of the Weymouth DTO and chill potential enemies from encroaching on the DTO's turf—will frequently appear in rap videos and other posts uploaded to Youtube and Instagram, in which they display firearms, use hand signs or flash insignias for the Weymouth DTO, and threaten acts of violence against rivals.  Screenshots from some of these videos are below:

"Patroncito"



Shown above:  Screenshot from YouTube video entitled "Patroncito," uploaded November 1, 2023 by an unindicted co-conspirator (Co-Conspirator 11), in which Co-Conspirator 12 (whose alias was "Panza") appears brandishing a firearm, and Co-Conspirator 11 raps the lyrics, "I'll get you with Panza with Draco and you're stiff"

"Philly Boy"





Shown above:  Screenshots from YouTube video entitled "Philly Boy," uploaded April 19, 2024 by an unindicted co-conspirator (Co-Conspirator 13), filmed on the 3100 block of Weymouth Street, in which defendants ELLIOTT MATTEI-RODRIGUEZ, a/k/a "Elio," LUIS WILLIAMS, JOSE SANTANA-GONZALEZ, a/k/a "Chipi," a/k/a "Chepo," and JOHN DAVID LOPEZ-BORIA, a/k/a "Grande," appear next to individuals wielding firearms, making gestures of violence or gang affiliation, and walking through streets that neighbor the 3100 block of Weymouth Street

"23"



Shown above, screenshot from YouTube video entitled "23," uploaded May 18, 2024 by Co-Conspirator 11, in which defendant JOHN DAVID LOPEZ-BORIA, a/k/a "Grande," appears brandishing a firearm, and in which LOPEZ-BORIA, Co-Conspirator 11, and others are shown holding stacks of drug proceeds on the 3100 block of Weymouth Street. The lyrics rapped include, "You die today or you die today, I will make sure of it, They told me the facts, you're talking to DEA."

<u>"Kaioken"</u>



Shown above, screenshot from YouTube video entitled "Kaioken," uploaded January 16, 2025 by an unindicted co-conspirator, Co-Conspirator 17, in which Co-Conspirator is seen brandishing a handgun with an extended magazine on a stoop outside the "bunker" at 3153 Weymouth Street, and in which defendant JOHN DAVID LOPEZ BORIA, a/k/a "Grande" also appears.   In the video, Co-Conspirator 17 raps lyrics that include, "I don't talk, I get in and will come to hunt you, asshole."

8.      The Weymouth DTO is an organized drug operation with an established scheduled of "shifts" for caseworkers and street dealers.  The schedule is distributed by leaders of the Weymouth DTO, such as defendants RAMON ROMAN-MONTANEZ and NANCY RIOS-VALENTIN, and sets forth which member of the group will be working on a given day of the week and during what time block.  An example of the written schedule from May 2022, which was provided by defendant NANCY RIOS VALENIN to another co-conspirator in a text message, is shown below.



The evidence in this case includes 6 months of recordings from Title III wiretaps—on phones belonging to five different defendants in the indictment—which in turn demonstrates that the DTO continues to work in an organized, business-like fashion, assigning shifts to different DTO members, coordinating the delivery of new installments of fentanyl, cocaine and crack to the block on a regular basis, and  collecting and pooling proceeds from the sales of drugs so that they go back into a common pot.

9.      Given the drug weights involved, the violent nature of the group, and the sentencing exposure for all individual charged, the government is seeking the pretrial detention of all 33 defendants listed in the indictment.   Every single one of these individuals was an

entrenched, committed member of the Weymouth DTO—with some defendants going back to

2016, 2017, and 2018, in terms of their activities on the 3100 block of Weymouth (defendants

JOSE ANTONIO MORALES NIEVES, ANGEL RIOS VALENTIN, RAMON ROMAN-

MONTANEZ, NANCY RIOS-VALENTIN, JAVIER RESTO-BERRIOS, CARLA DIAZ-

RESTO), others steadily working on the block since the 2020, 2021, and 2022 time frame

(defendants ANGEMILL GONZALEZ-CLAUDIO, ELLIOT MATTEI-RODRIGUEZ, KELVIN

AGUAYO-GARCIA), and even what-may-be newer members of the Weymouth DTO

demonstrating a steady record of involvement in the DTO at least for many months.

**II.**    **LEGAL STANDARD**

Title 18 U.S.C. § 3142(g) sets forth the factors that this Court is to consider in

determining whether a person should be released or detained pending trial in a federal court.  In

summary, these factors are:

> 1) the nature and circumstances of the offenses charged;
> 2) the weight of the evidence against the defendant;
> 3) the history and characteristics of the defendant including-
>> a) employment history, financial resources, drug abuse, criminal history and record pf appearance at court proceedings, and
>> b) whether he was on supervision at the time of his offenses or arrests or was on release pending court proceedings;
> 4) the dangerousness to any person or the community.

18 U.S.C. § 3142(g).

The Bail Reform Act also provides that with respect to certain specified crimes, a

rebuttable presumption arises that a defendant is a risk of flight and that no condition or

combination of conditions will reasonably assure the safety of any other person and the

community, such that detention pending trial is presumed warranted.  18 U.S.C. § 3142(e).  One

11

of the crimes specified is a violation of the Controlled Substances Act for which the maximum

term of imprisonment is 10 years' or greater.    Specifically, Section 3142(e)(3) states:

> Subject to rebuttal…it shall be presumed that
> no condition or combination of conditions will
> reasonably assure the appearance of the person as
> required and the safety of the community
> if the judicial officer finds that there is
> probable cause to believe that the person
> committed:
>
> (A) an offense for which a maximum term
> of imprisonment of ten years or more is prescribed
> in the Controlled Substances Act (21 U.S.C. § 801
> et seq.)…
>
> (B) an offense under section 924(c) . . . of this title.

18 U.S.C. §§ 3142(e)(3)(A), (B).

Here, because the amount of crack cocaine charged in Count One and attributable to

defendant is in excess of 280 grams, the maximum term of imprisonment the defendant faces

under the Controlled Substances Act is life imprisonment.  *See* 21 U.S.C. 841(a)(1), (b)(1)(A).

Accordingly, the presumption in favor of detention under the Bail Reform Act is triggered in this

case.

Where the presumption in favor of detention arises, a defendant must rebut the

presumption by presenting some credible evidence that he/she will not flee and does not pose a

threat to the community.  *United States v. Suppa*, 799 F.2d 115, 120 (3d Cir. 1986).   In drug-

trafficking cases such as this, the presumption is difficult to overcome.  "The statutory language,

as well as the legislative history [of the Bail Reform Act], unequivocally establishes that

Congress intended to equate traffic in drugs with a danger to the community."  *Strong,* 775 F.2d

at 506.  Indeed, Congress and the Third Circuit have provided this guidance:

> The [Judiciary] Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence. ... **The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."**

*Id.* at 507 (quoting S. Rep. No. 225, 98th Cong., 2d Sess. 12-13) (emphasis in original).  As the Third Circuit has noted: "It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity.  Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and, thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism." *Strong*, 775 F.2d at 507 (quoting S. Rep. No.225, 98th Cong., 1st Sess. 20); *accord United States v. Cervantes,* 951 F.2d 859, 861 (7th Cir. 1992) (defendant involved in the distribution of large quantities of drugs poses continuing danger to the community); *United States v. Ramirez*, 843 F.2d 256, 258 (7th Cir. 1988) (same).

## III.    INDIVIDUALIZED ANALYSIS FOR THE DEFENDANT

Defendant CHAYENNE HERRERA cannot overcome the presumption in favor of detention here.  As discussed below, he demonstrates a serious danger to the community if released as well as a risk of flight if released.

Specific Charges / Evidence Pertaining to the Defendant

Defendant CHAYENNE HERRERA charged in Count One, the conspiracy count, with a drug weight attributable to him of 280 grams or more of crack cocaine and 500 grams or more of powder cocaine, and in Count Thirty-Eight, with possessing with intent to distribute 28 grams or more of crack cocaine (that is, approximately 36 grams) and 463 grams of powder cocaine on August 13, 2025.   He was also named in numerous Overt Acts pertaining to his efforts to obtain

additional quantities of crack cocaine for distribution by the DTO on Weymouth Street and to maintain the Rorer Street garage.

Defendant CHAYENNE HERRERA was a leader in the Weymouth DTO and a close associate of defendant JOSE MORALES NIEVES, a/k/a "Flaco," the owner of the 3100 block of Weymouth Street. HERRERA's role was to help maintain a steady supply of cocaine and crack cocaine for the DTO in the garage at 3326 Rorer Street to be packaged and stored. HERRERA helped oversee the Rorer Street garage and would ensure that it was "stocked" on an ongoing basis. HERRERA also helped coordinate the pick-up, delivery, and accounting of drug proceeds from cocaine and crack sales—referred to as "tickets" or "rock tickets"—so that these proceeds could be delivered to the source of supply and new quantities of cocaine and crack obtained.

Defendant HERRERA was the subject of one of the court-authorized wiretaps in this case, and is heard on dozens of calls speaking with co-conspirators that include MORALES-NIEVES, JOEL CARILLO-CRESPO a/k/a "Joey," LUIS LEVANTE MEDINA a/k/a "Diamante," and KELVIN AGUAYO-GARCIA, a/k/a "Negro," in which he coordinated supplies of crack cocaine to and from 3326 Rorer Street.

In a wire call with MORALES-NIEVES on August 12, 2025, MORALES-NIEVES reminded HERRERA that he is "in charge" at 3326 Rorer Street when Diamante (i.e., defendant LUIS LEVANTE-MEDINA) goes to Puerto Rico, and instructed HERRERA that he needs to be "looking out for things" at the garage. Notably, when the Rorer Street garage was searched on August 13, 2025, it was found to contain 36 grams of crack cocaine and 463 grams of powder cocaine. Later that same day, HERRERA called MORALES-NIEVES to tell him that the "church" (the nickname for the Rorer Street garage) had been hit by the police. Also found

during the search of the garage were ledgers of payments made or owed.   Those ledgers

included HERRERA's name—referred to as "Cito" (his nickname) and "Chayan."  See below:





Defendant HERRERA was a frequent visitor to the Rorer Street garage, at least during

the period of time law enforcement had a pole camera installed outside of the location, in the

summer of 2025.  Below is an image of HERRERA taken from the pole camera outside 3326

Rorer Street (the Rorer Street garage) on July 23, 2025, after HERRERA spoke on the phone

with AGUAYO-GARCIA and then met with him at the garage to provide a reup of crack cocaine

for the block.  The image shows HERRERA leaving the garage and getting into his car:



Meanwhile, the above photograph was taken at 3:49 p.m.  As noted in the indictment, about an

hour later that same day, at 4:45 p.m., HERRERA spoke with co-defendant JOEL CARRILLO-

CRESPO on the phone, and discussed the share of drug proceeds HERRERA would be

receiving.  At 6:04 p.m. that day, HERRERA told CARRILLO-CRESPO he had "ten" left

(referring to quantities of controlled substances) and CARRILLO-CRESPO said he would bring more to the Rorer Street garage and would leave them on the stove.

In addition, there are numerous intercepted calls in which HERRERA coordinated with AGUAYO-GARCIA to receive drug proceeds (referred to as "tickets") from recent crack sales on the block, and/or to procure more crack for the DTO at the Rorer Street garage.  For instance, on June 13, 2025, AGUAYO-GARCIA and HERRERA had the following exchange, about AGUAYO-GARCIA bringing HERRERA "two more tickets" (i.e., drug proceeds) and expecting "six bundles" (new drugs) in return:

> HERRERA: [UI] had to step out, if- if, I'm around, you can call me--
>
> AGUAYO-GARCIA: [OV] Listen to me, I gave four- who had to leave, Diamante?
>
> HERRERA: Uh-hum.
>
> AGUAYO-GARCIA: Ok, well, listen. A bit ago I gave him four, I'm going over to you and give you two more tickets; that's six. Give me six.
>
> HERRERA: Ok.
>
> AGUAYO-GARCIA: Because a while ago I gave him four tickets and he didn't gi- he didn't give me the four chickens. I'm going to give you two more--
>
> HERRERA: [OV] Ok, well, well--
>
> AGUAYO-GARCIA: --that's six, and I'll send the number to Joey.
>
> HERRERA: Ok, ok. Well, let me make the call before you- you know.
>
> AGUAYO-GARCIA: He has to give me six.
>
> HERRERA: Ok, then.

Similarly, on June 22, 22025, AGUAYO-GARCIA called HERRERA and told him he had "five tickets," and that he would "bring them to you [HERRERA] in a couple of minutes," to which HERRERA responded okay.    A few minutes later, AGUAYO-GARCIA called HERRERA to say he was "heading out" towards him.

Defendant HERRERA was also an admitted right-hand man of, and loyal to, co-defendant MORALES-NIEVES. In a 38-minute call recorded on July 28, 2025, the two discussed how to handle problems with ROMAN-MONTANEZ, CARRILLO-CRESPO, and $50,000 in "rent" that was owed to MORALES-NIEVES. MORALES-NIEVES is a violent multi-time felon who controlled the block through violence. HERRERA was happy to provide MORALES-NIEVES the intel MORALES-NIEVES needed in order to maintain his rule through violence.

Criminal History

HERRERA has no prior criminal convictions.

Flight Risk

HERRERA faces a 10-year mandatory minimum and a Guidelines range above that. Given that he has never been incarcerated, the potential sentence he faces in this case creates an incentive to flee.  While HERRERA appears to work, at times, on construction jobs in the Philadelphia and Cherry Hill, New Jersey, areas,[1] he does not have any steady employment in Philadelphia or any significant local caretaking responsibilities known to the government that would overcome the incentive to depart the jurisdiction.  In addition, he is familiar with means of

---

[1] Wage records from Pennsylvania indicate that in 2025Q1, he earned $690 from All Staffing Warehouse Logistics Inc. in Bensalem, PA, and that in 2025Q2, he earned $5,157 from Scully Company in Jenkintown, PA.  Wage records from New Jersey indicate that in 2024Q3, he earned $1,044 from Precision Property Solutions LLC in Cherry Hill, NJ, and in 2024Q2, he earned $4,297 from the same company.

evading law enforcement detection and destroying evidence.  In a recorded call from August 13, 2025—the day the Rorer Street garage was searched by police—HERRERA spoke on the phone with an associate at 5:50 p.m., during which HERRERA said that although he had a "client for it and everything" (referring to a quantity of controlled substances), and had enough there" to make seven good bundles," HERRERA flushed those drugs away in the "toilet" because "of what happened today" (i.e., the police searching the Rorer Street garage earlier that morning).  In a recorded call from August 18, 2025, HERRERA spoke with another associate about disguising monetary payments—and making transactions in cash—to avoid "getting block for receiving too much money" or having "anything about you show up."

Additionally, HERRERA stated that he does not plan on staying in Philadelphia. The day of his arrest, he told the FBI that he intends to move to New York.  That statement indicates his potential for flight.

<u>Danger to the Community</u>

Defendant HERRERA presents a danger to the community that no conditions of pretrial release can sufficiently protect against.  He is a committed member of a violent drug-trafficking organization that has sold kilograms of fentanyl, cocaine, and crack cocaine over the years, and has used firearms, threats of violence, and actual violence, to promote its objectives and punish informants.  Throughout the recent wire investigation, HERRERA was repeatedly recorded on the wire coordinating resupplies of cocaine and crack cocaine to the stash house/packaging center at 3326 Rorer Street and was surveilled going to that location to pick up drug proceeds or ensure that new supplies of drugs were available.  In sum, the defendant has demonstrated himself to be a committed member of the Weymouth DTO and to present a danger to the community that no conditions of pretrial release can adequately protect against.

IV.    **<u>CONCLUSION</u>**

When all of these factors are viewed in light of the substantial sentence the defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of defendant as required and/or the safety of the community and the confidential sources in this case. WHEREFORE, the government respectfully submits that the Government's Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

DAVID METCALF
United States Attorney

_/s/ Sara A. Solow_
SARA A. SOLOW
JASON D. GRENELL
Assistant United States Attorney

Dated:  October 27, 2025

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a copy of the Government's Motion for Pretrial Detention was

served by electronic mail, on the following defense counsel:

William Brennan, Esq.
brennan_law@hotmail.com

*/s/ Sara A. Solow*
SARA A. SOLOW
JASON D. GRENELL
Assistant United States Attorney

Date:   October 27, 2025