IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-460-13** |
| **JAVIER RESTO-BERRIOS**<br>**a/k/a "Chicken"** | : | |

**GUILTY PLEA AGREEMENT**

Under Rule 11 of the Federal Rules of Criminal Procedure, the government, the defendant, and the defendant's counsel enter into the following guilty plea agreement. Any reference to the United States or the government in this agreement shall mean the Office of the United States Attorney for the Eastern District of Pennsylvania.

1. The defendant agrees to plead guilty to Counts 1, 5, 6, 12, 17, 18, 21, 22, 24, 25, 28, 29, 30, 35, and 39 of the superseding indictment charging him with conspiracy to distribute 400 grams or more of fentanyl, 280 grams or more of cocaine base ("crack"), and cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(C); distributing and aiding and abetting the distribution of fentanyl and crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (b)(1)(C) and 18 U.S.C. § 2; and two counts of attempting to possess and aiding and abetting the possession of 400 grams or more of fentanyl with the intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2; and not to contest forfeiture as set forth in the notice of forfeiture charging criminal forfeiture under 18 U.S.C. § 853, all arising from the defendant's participation in the Weymouth Street Drug Trafficking Organization, an entrenched fentanyl and cocaine trafficking organization centered on the 3100 block of Weymouth Street, in Philadelphia as set forth in the superseding indictment. The defendant further acknowledges his waiver of rights, as set forth in the attachment to this agreement.

2. The defendant understands, agrees, and has had explained to him by counsel that, in the absence of a government motion under 18 U.S.C. § 3553(e) or application of the "safety valve" provision in 18 U.S.C. § 3553(f), the Court must impose a mandatory minimum sentence of 10 years' imprisonment on Count 1, charging conspiracy to distribute 400 grams or more of fentanyl, 280 grams or more of cocaine base ("crack"), and cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(C), and Counts 25 and 29, charging attempted possession with the intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2; and 5 years' imprisonment on Count 35, charging distribution of fentanyl and 28 grams or more of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (b)(1)(C) and 18 U.S.C. § 2, and Count 39, charging distribution of 40 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2.

The defendant understands, agrees, and has had explained to him by counsel that the following statutory maximum sentences apply in this case:

Count 1 (conspiracy to distribute 400 grams or more of fentanyl, 280 grams or more of cocaine base ("crack"), and cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(C)): Life imprisonment with a mandatory minimum 10 years' imprisonment, a mandatory minimum of 5 years, up to a lifetime, of supervised release, a $10,000,000 fine, and a $100 special assessment.

Count 5 (distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C)): 20 years' imprisonment, a mandatory minimum 3 years, up to a lifetime, of supervised release, a $1,000,000 fine, and a $100 special assessment.

Count 6 (distributing and aiding and abetting the distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2): 20 years' imprisonment, a mandatory

minimum 3 years, up to a lifetime, of supervised release, a $1,000,000 fine, and a $100 special assessment.

Count 12 (distributing and aiding and abetting the distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2): 20 years' imprisonment, a mandatory minimum 3 years, up to a lifetime, of supervised release, a $1,000,000 fine, and a $100 special assessment.

Count 17 (distributing and aiding and abetting the distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2): 20 years' imprisonment, a mandatory minimum 3 years, up to a lifetime, of supervised release, a $1,000,000 fine, and a $100 special assessment.

Count 18 (distributing and aiding and abetting the distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2): 20 years' imprisonment, a mandatory minimum 3 years, up to a lifetime, of supervised release, a $1,000,000 fine, and a $100 special assessment.

Count 21 (distributing and aiding and abetting the distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2): 20 years' imprisonment, a mandatory minimum 3 years, up to a lifetime, of supervised release, a $1,000,000 fine, and a $100 special assessment.

Count 22 (distributing and aiding and abetting the distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2): 20 years' imprisonment, a mandatory minimum 3 years, up to a lifetime, of supervised release, a $1,000,000 fine, and a $100 special assessment.

Count 24 (distributing and aiding and abetting the distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2): 20 years' imprisonment, a mandatory minimum 3 years, up to a lifetime, of supervised release, a $1,000,000 fine, and a $100 special assessment.

Count 25 (attempting to possess and aiding and abetting the possession of 400 grams or more of fentanyl with the intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2): Life imprisonment with a mandatory minimum 10 years' imprisonment, a mandatory minimum of 5 years, up to a lifetime, of supervised release, a $10,000,000 fine, and a $100 special assessment.

Count 28 (distributing and aiding and abetting the distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2): 20 years' imprisonment, a mandatory minimum 3 years, up to a lifetime, of supervised release, a $1,000,000 fine, and a $100 special assessment.

Count 29 (attempting to possess and aiding and abetting the possession of 400 grams or more of fentanyl with the intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2): Life imprisonment with a mandatory minimum 10 years' imprisonment, a mandatory minimum of 5 years, up to a lifetime, of supervised release, a $10,000,000 fine, and a $100 special assessment.

Count 30 (distributing and aiding and abetting the distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2): 20 years' imprisonment, a mandatory minimum 3 years, up to a lifetime, of supervised release, a $1,000,000 fine, and a $100 special assessment.

Count 35 (distributing and aiding and abetting the distribution of fentanyl and 28 grams or more of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (b)(1)(C) and 18 U.S.C. § 2): 40 years' imprisonment with a mandatory minimum 5 years' imprisonment, a mandatory minimum 4 years, up to a lifetime, of supervised release, a $5,000,000 fine, and a $100 special assessment.

Count 39 (distributing and aiding and abetting the distribution of 40 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2): 40 years' imprisonment with a mandatory minimum 5 years' imprisonment, a mandatory minimum 4 years, up to a lifetime, of supervised release, a $5,000,000 fine, and a $100 special assessment.

The total permissible statutory maximum sentence is: Life imprisonment, a mandatory minimum 10 years' imprisonment, a mandatory minimum of 5 years' supervised release up to a lifetime of supervised release, a $50,000,000 fine, and a $1,500 special assessment. Forfeiture of any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offenses charged also may be ordered.

3. The defendant further understands that supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to 5 years on Counts 1, 25, and 29; by up to 3 years on Counts 35 and 39; and by up to 2 years on Counts 5, 6, 12, 17, 18, 21, 22, 24, 28, and 30. Thus, a violation of supervised release increases the possible period of incarceration and makes it

possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

4. The government may:

a. Make whatever sentencing recommendation as to imprisonment, fines, forfeiture, restitution, and other matters which the government deems appropriate.

b. Comment on the evidence and circumstances of the case; bring to the Court's attention all facts relevant to sentencing including evidence relating to dismissed counts, if any, and to the character and any criminal conduct of the defendant; address the Court regarding the nature and seriousness of the offense; respond factually to questions raised by the Court; correct factual inaccuracies in the presentence report or sentencing record; and rebut any statement of facts made by or on behalf of the defendant at sentencing.

c. Nothing in this agreement shall limit the government in its comments in, and responses to, any post-sentencing matters.

5. In order to facilitate the collection of the criminal monetary penalties to be imposed in connection with this prosecution, the defendant agrees fully to disclose all income, assets, liabilities, and financial interests, held directly or indirectly, whether held in his own name or in the name of a relative, spouse, associate, another person, or entity, and whether held in this country or outside this country. Accordingly:

a. The defendant will submit a completed Financial Statement of Debtor to the U.S. Attorney's Office, in a form it provides and as it directs, within 14 days of execution of this plea agreement. The defendant promises that his financial statement and disclosures will be complete, accurate, and truthful.

b. The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him in order to evaluate the defendant's ability to satisfy any monetary penalty imposed by the Court.

c. Upon request by the United States, the defendant also agrees to submit to a financial deposition or interview prior to sentencing, and provide all documents within the defendant's possession or control as requested by the U.S. Attorney's Office regarding the defendant's financial resources and that of the defendant's household.

d. The defendant agrees not to transfer, assign, dispose, remove, conceal, pledge as collateral, waste, or destroy property with the effect of hindering, delaying, or defrauding the United States or victims. The defendant otherwise shall not devalue any property worth more than $1,000 before sentencing, without the prior approval of the United States.

e. The defendant also agrees to execute any documents necessary to release any funds held in any repository, bank, investment, other financial institution, or any other location in order to make partial or total payment toward any monetary penalty that the Court may impose.

f. If the defendant fails to comply with this paragraph of the plea agreement or if any of the defendant's representations pursuant to the requirements set forth in this paragraph are false or inaccurate, the government may elect to: void this agreement; and/or argue that the defendant is not entitled to a downward adjustment for acceptance of responsibility under Guideline Section 3E1.1. The government may also elect to: void the forfeiture portion of the agreement and try the forfeiture before the Court and seek a larger forfeiture; and/or pursue any and all forfeiture remedies available at law or equity. The defendant agrees to waive any

right to a trial by jury on all forfeiture issues, and to waive any claim at trial based on any statute of limitations.

6. The defendant agrees that any restitution or fine imposed by the Court shall be due and payable immediately and on such terms and conditions that the Court may impose. In the event the Court imposes a schedule for the payment of restitution or fine, the defendant understands and agrees that such a schedule represents a minimum payment obligation and does not preclude the United States Attorney's Office from pursuing any other means by which to satisfy the defendant's full and immediately enforceable financial obligation under applicable federal and/or state law.

7. The defendant agrees that forfeiture, restitution, fine, assessment, tax, interest, or other payments in this case do not constitute extraordinary acceptance of responsibility or provide any basis to seek a variance from the applicable Sentencing Guideline range.

8. The defendant agrees to pay the special victims/witness assessment in the amount of $1500 before the time of sentencing and shall provide a receipt from the Clerk to the government before sentencing as proof of this payment.

9. The parties agree to the following with respect to forfeiture of assets:

a. The defendant agrees that, based on the defendant's conviction for his offenses of conspiracy to distribute fentanyl, cocaine and cocaine base ("crack") and possession with the intent to distribute cocaine base ("crack") and cocaine, as charged in Counts One and Thirty-Eight of the indictment, he forfeits his right, title, and interest in the following assets, that such assets were used or were intended to be used to commit or facilitate the offenses and are subject to forfeiture under 21 U.S.C. § 853, and that such assets are forfeitable to the United

States in any judicial (criminal and civil) and administrative proceeding(s) at the government's exclusive discretion, and without further notice to the defendant:

i. 3110 Weymouth Street;
ii. 3115 Weymouth Street;
iii. 3116 Weymouth Street;
iv. 3125 Weymouth Street;
v. 3126 Weymouth Street;
vi. 3131 Weymouth Street;
vii. 3132 Weymouth Street;
viii. 3133 Weymouth Street;
ix. 3136 Weymouth Street;
x. 3137 Weymouth Street;
xi. 3140 Weymouth Street;
xii. 3150 Weymouth Street;
xiii. 3151 Weymouth Street;
xiv. 3152 Weymouth Street;
xv. 3153 Weymouth Street;
xvi. 3154 Weymouth Street;
xvii. a Taurus PT99, AF 9mm semi-automatic pistol, with 16 live rounds of ammunition;
xviii. a Smith & Wesson .38 Special revolver,bearing serial number #J75447;
xix. a Ruger LC9, 9mm semi-automatic pistol, bearing serial number #321-15519, with 10 live rounds of ammunition;
xx. a box of .40 caliber ammunition;
xxi. a box of .38 special ammunition;
xxii. two black magazines;
xxiii. a black and brown Draco AK 47, 7.62 caliber semi-automatic rifle, bearing serial number DR-8262-10, loaded with 31 live rounds of ammunition;
xxiv. a black and green AR-15, aero model X15 semi-automatic rifle, bearing serial number X257462, with a double-drum magazine that was loaded with 80 live rounds of ammunition;
xxv. a Pioneer Arms Co. 7.62 caliber semi-automatic pistol commonly referred to as a "Draco" with serial number PAC115804221;
xxvi. a Glock .40 caliber semi-automatic pistol, bearing serial number BZMK804;
xxvii. a box of .45 caliber ammunition;
xxviii. Polymer80 Inc., Model PFC940, .40 caliber S&W, attached to a Glock 23 Austria slide bearing serial number HBE973, loaded with 14 live rounds of ammunition;
xxix. Hi-Point, Model 995 semiautomatic rifle, bearing serial number F120900;

xxx. a Sig Sauer 9mm semi-automatic pistol, bearing serial number 26C069994;

xxxi. a Glock 26, 9mm semi-automatic pistol, bearing serial number #BGXC458;

xxxii. a Keltec 9mm semi-automatic pistol, bearing serial number RAF95;

xxxiii. a Glock 23 Austria, .40 caliber semi-automatic pistol, bearing serial number 6YB992, loaded with an extended magazine containing 28 rounds;

xxxiv. a Glock 17 Austria, 9x19 semi-automatic pistol, bearing serial number XW200, loaded with an extended magazine containing 22 live rounds of ammunition;

xxxv. Glock 30, .45 caliber semi-automatic pistol loaded with 24 live rounds of ammunition, with an obliterated serial number;

xxxvi. a black Glock 22, .40 caliber semi-automatic pistol, bearing serial number HUL589, with three loaded magazines containing 45 live rounds of ammunition;

xxxvii. a black Glock 23, .40 caliber semi-automatic pistol, bearing serial number BSRF744;

xxxviii. a black Ruger EC9, 9mm semi-automatic pistol, with a magazine containing seven live rounds of ammunition;

xxxix. a silver black handle Taurus Armas, .38 caliber revolver, bearing serial number AAL061522, loaded with eight live rounds of ammunition;

xl. a black Taurus, Model G2C semi-automatic pistol, bearing serial number TMR 12764, with an extended magazine containing 20 live rounds of ammunition, and a magazine holding 10 live rounds of ammunition; and

xli. an assortment of ammunition and firearm accessories, including a box of Sellier & Bellot .40 caliber handgun ammunition with six live rounds of ammunition, a loose live round of 9 mm Luger ammunition, a box of 5.56 live rounds of ammunition, two AK-47 40 round magazines, one 60 round AR/M4 magazine, one box of 9 mm live rounds of ammunition, and one blue box of 9 mm live ammunition recovered from 3326 Rorer Street, Philadelphia, PA.

b. The defendant agrees to the entry of a preliminary order of forfeiture pursuant to Federal Rule of Criminal Procedure 32.2(b) as soon as possible after the guilty plea and before sentencing. Pursuant to Rule 32.2(b)(4), the defendant further agrees that, upon the request of the government, the preliminary order of forfeiture may be made final before his

sentencing. The defendant waives all statutory deadlines, including but not limited to deadlines set forth in 18 U.S.C. § 983.

c. The defendant acknowledges that forfeiture is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea. The defendant further waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d. The defendant agrees to waive any and all constitutional, statutory, and other challenges to the forfeiture on any and all grounds, including any claims, defenses, or challenges arising under the Double Jeopardy or Excessive Fines Clauses of the Eighth Amendment, resulting from any forfeiture imposed in this case and/or any pending or completed administrative or civil forfeiture actions, and stipulates that such forfeiture is not grossly disproportionate to his criminal conduct.

e. The defendant agrees to take all necessary action to pass clear title of the assets listed in this paragraph to the United States, including, but not limited to, completing any documents required to transfer title of these assets to the United States. The defendant also agrees to take all necessary action to ensure that the assets listed in this paragraph are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture.

f. The defendant consents to the interlocutory sale of any or all of the assets upon motion of the government, following the entry of a preliminary order of forfeiture.

g. The defendant agrees that he will not file, or assist any other party in filing, a claim or petition asserting an interest in or otherwise contesting the forfeiture of any of the assets listed in this paragraph.

h. In the event that a successful claim is made by a third party to any of the assets listed in this paragraph, the defendant agrees to forfeit substitute assets equal in value to those assets awarded to that third party.

i. The defendant agrees to surrender to the government possession of any property to be forfeited by two weeks before the sentencing date.

j. The defendant agrees, with respect to any real property to be forfeited, that the government may file a lis pendens on the real property; the government shall have access to the real property for the purposes of inspection, appraisal, and testing; and the defendant will take all actions and execute all documents requested by the government to effectuate the government's access to the real property.

10. The defendant may not withdraw his plea because the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement. No one has promised or guaranteed to the defendant what sentence the Court will impose.

11. Pursuant to USSG § 6B1.4, the parties enter into the following stipulations under the Sentencing Guidelines Manual. It is understood and agreed that: (1) the parties are free to argue (except as stated below) the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, and adjustments; (2) these stipulations are not binding upon either the Probation Office or the Court; and (3) the Court may make factual and legal determinations that differ from these stipulations and that may

result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed:

a. The parties agree and stipulate that the cocaine base involved in this case is "crack" as defined in USSG § 2D1.1, Note D.

b. The parties agree and stipulate that: at least 90,000 kilograms of converted drug weight in furtherance of the criminal activity jointly undertaken by the defendant and co-conspirators; this amount was within the scope of the defendant's agreement; this amount was reasonably foreseeable to the defendant in connection with the conspiracy; and the defendant's Guideline range should be calculated based on this amount pursuant to USSG § 1B1.3.

c. The parties agree and stipulate that, as of the date of this agreement, the defendant has demonstrated acceptance of responsibility for his offense, making the defendant eligible for a 2-level downward adjustment under USSG § 3E1.1(a).

d. The parties agree and stipulate that, as of the date of this agreement, the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, resulting in a 1-level downward adjustment under USSG § 3E1.1(b), if such a downward adjustment is applicable under the Sentencing Guidelines.

12. In exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to file any appeal, any collateral attack, or any other writ or motion that challenges the defendant's conviction, sentence, or any other matter relating to this prosecution, including any assessment, forfeiture, restitution, or the length or condition of supervised release, whether such an appeal, collateral attack, or

other writ or motion arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. As part of this knowing and voluntary waiver of the right to challenge the conviction and sentence, the defendant expressly waives the right to raise on appeal or on collateral review any argument that (1) the statutes to which the defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes.

a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding:

i. that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 2 above;

ii. challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court; and

iii. that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel.

If the defendant does appeal or seek collateral relief pursuant to this subparagraph (b), no issue may be presented by the defendant in such a proceeding other than those described in this subparagraph (b).

13. The defendant acknowledges that pursuing an appeal or any collateral attack waived in the preceding paragraph may constitute a breach of this plea agreement. The government recognizes that the mere filing of a notice of appeal is not a breach of the plea agreement. The government may declare a breach only after the defendant or his counsel thereafter states, either orally or in writing, a determination to proceed with an appeal or collateral attack raising an issue the government deems barred by the waiver. The parties acknowledge that the pursuit of an appeal constitutes a breach only if a court determines that the appeal does not present an issue that a judge may reasonably conclude is permitted by an exception to the waiver stated in the preceding paragraph or constitutes a "miscarriage of justice" as that term is defined in applicable law.

14. The defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

15. The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

16. The defendant is satisfied with the legal representation provided by the defendant's lawyer; the defendant and this lawyer have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that he is guilty.

17. The parties have also entered a supplemental agreement that is filed under seal. It is agreed that the parties' guilty plea agreement, along with the sealed supplement, presents the entire agreement of the parties with regard to the defendant's guilty plea and sentence. The parties agree that neither has made any additional promise, agreement, or understanding other than those set forth in this written guilty plea agreement and the sealed supplement, and that no additional promises, agreements, or understandings will be entered into unless in writing and signed by all parties.

DAVID METCALF
United States Attorney

Javier Resto
JAVIER RESTO-BERRIOS
Defendant

*/s/ MaryTeresa Soltis for*
SALVATORE L. ASTOLFI
Chief, Criminal Division
Assistant United States Attorney

[signature]
HEATHER J. MATTES
Counsel for the Defendant

*/s/ Edward D. Penetar*
EDWARD D. PENETAR
SARA A. SOLOW
JASON D. GRENELL
ROBERT J. LIVERMORE
Assistant United States Attorneys

Date: 7-27-26

**Attachment**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-460-13** |
| **JAVIER RESTO-BERRIOS**<br>**a/k/a "Chicken"** | : | |

**ACKNOWLEDGMENT OF RIGHTS**

I hereby acknowledge that I have certain rights that I will be giving up by pleading guilty.

1. I understand that I do not have to plead guilty.

2. I may plead not guilty and insist upon a trial.

3. At that trial, I understand

a. that I would have the right to be tried by a jury that would be selected from the Eastern District of Pennsylvania and that along with my attorney, I would have the right to participate in the selection of that jury;

b. that the jury could only convict me if all 12 jurors agreed that they were convinced of my guilt beyond a reasonable doubt;

c. that the government would have the burden of proving my guilt beyond a reasonable doubt and that I would not have to prove anything;

d. that I would be presumed innocent unless and until such time as the jury was convinced beyond a reasonable doubt that the government had proven that I was guilty;

e. that I would have the right to be represented by a lawyer at this trial and at any appeal following the trial, and that if I could not afford to hire a lawyer, the court would appoint one for me free of charge;

f. that through my lawyer I would have the right to confront and cross-examine the witnesses against me;

g. that I could testify in my own defense if I wanted to and I could subpoena witnesses to testify in my defense if I wanted to; and

h. that I would not have to testify or otherwise present any defense if I did not want to and that if I did not present any evidence, the jury could not hold that against me.

4. I understand that if I plead guilty, there will be no trial and I would be giving up all of the rights listed above.

5. I understand that if I decide to enter a plea of guilty, the judge will ask me questions under oath and that if I lie in answering those questions, I could be prosecuted for the crime of perjury, that is, for lying under oath.

6. I understand that if I plead guilty, I have given up my right to appeal, except as set forth in the appellate waiver provisions of my plea agreement.

7. Understanding that I have all these rights and that by pleading guilty I am giving them up, I still wish to plead guilty.

8. I acknowledge that no one has promised me what sentence the Court will impose. I am aware and have discussed with my attorney that, at sentencing, the Court will calculate the Sentencing Guidelines range, and then, in determining my sentence, will consider the Guideline range and all relevant policy statements in the Sentencing Guidelines, along with other sentencing factors set forth in 18 U.S.C. § 3553(a), including

(1) the nature and circumstances of the offense and my personal history and characteristics;

(2) the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5) the need to provide restitution to any victims of the offense.

Javier Resto

JAVIER RESTO-BERRIOS
Defendant

HEATHER J. MATTES
Counsel for the Defendant

Dated: 7.27.2026