**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-460-13** |
| **JAVIER RESTO-BERRIOS**<br>**a/k/a "Chicken"** | : | |

**GUILTY PLEA MEMORANDUM**

The United States of America, by its attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, Sara A. Solow, Jason D. Grenell, Robert J. Livermore, and Edward D. Penetar, Assistant United States Attorneys for the district, respectfully submits this guilty plea memorandum. The guilty plea hearing is scheduled for July 27, 2026.

## I. INTRODUCTION

On June 24, 2026, a grand jury in the Eastern District of Pennsylvania returned a 44-count superseding indictment charging JAVIER RESTO-BERRIOS a/k/a "Chicken" and 34 other co-defendants with running one of Philadelphia's largest and most entrenched fentanyl and cocaine trafficking operations, centered on the 3100 block of Weymouth Street, from 2016 through 2025. Defendant RESTO-BERRIOS was specifically charged with Count One, conspiracy to traffic 400 grams or more of fentanyl, and powder cocaine and crack cocaine, between 2016 and September 2025, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(C) (Count One), twelve counts of distribution of fentanyl and/or crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and/or (b)(1)(C) (Counts Five, Six, Twelve, Seventeen, Eighteen, Twenty-One, Twenty-Two, Twenty-Four, Twenty-Eight, Thirty, Thirty-

Five, and Thirty-Nine), and two counts of attempted possession with the intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) (Counts Twenty-Five and Twenty-Nine). He is also named in other Overt Acts in which he convenes and coordinates with other members of the Weymouth Drug Trafficking Organization ("Weymouth DTO") to conduct their activities, such as by counting drug proceeds, discussing quantities and prices of controlled substances, or helping connect interested buyers to street-dealers with available product.

## II. ELEMENTS OF THE OFFENSE

**Count 1: Conspiracy to Distribute 400 Grams or More of Fentanyl, 280 Grams or More of Cocaine Base ("Crack"), and Cocaine (21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(C))**

To obtain a conviction under 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(C), the government must prove the following elements beyond a reasonable doubt:

(1) Two or more persons agreed to distribute a controlled substance;

(2) The defendant was a party to or member of that agreement;

(3) The defendant joined the agreement or conspiracy knowing of its objective to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve that objective; and

(4) The weight or quantity of fentanyl which was within the conspiracy and reasonably foreseeable to the defendant was 400 grams or more, and the weight or quantity of cocaine base ("crack") which was within the conspiracy and reasonably foreseeable to the defendant was 280 grams or more.

*See* Third Circuit Model Jury Instructions (Criminal) 6.21.846B (Jan. 2024).

**Counts 25 and 29: Attempted Possession of 400 Grams or More of Fentanyl with the Intent to Distribute (21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)), and Aiding and Abetting (18 U.S.C. § 2)**

To obtain a conviction under 21 U.S.C. § 841(a)(1), (b)(1)(A), the government must prove the following elements beyond a reasonable doubt:

(1) The defendant intended to commit the crime of possession with the intent to distribute a controlled substance; and

(2) The defendant performed acts constituting substantial steps toward the commission of possession with the intent to distribute a controlled substance which strongly corroborates or confirms that the defendant intended to commit that crime.

*See* Third Circuit Model Jury Instructions (Criminal) 6.21.841B and 7.01 (Jan. 2024). Further, a Verdict Form with Special Interrogatories would ask the jury to conclude that the weight or quantity of the mixture and substance containing a detectable amount of fentanyl which the defendant attempted to possess with the intent to distribute was 400 grams or more.

**Counts 35 and 39: Distribution of 40 Grams or More of Fentanyl and/or 28 Grams or More of Cocaine Base ("Crack") (21 U.S.C. § 841(a)(1), (b)(1)(B)), and Aiding and Abetting (18 U.S.C. § 2)**

To obtain a conviction under 21 U.S.C. § 841(a)(1), (b)(1)(B), the government must prove the following elements beyond a reasonable doubt:

(1) The defendant distributed a mixture or substance containing a controlled substance;

(2) The defendant distributed the controlled substance knowingly or intentionally; and

(3) The controlled substance was fentanyl and/or cocaine base ("crack").

*See* Third Circuit Model Jury Instructions (Criminal) 6.21.841B (Jan. 2024). Further, a Verdict Form with Special Interrogatories would ask the jury to conclude that the weight or quantity of the mixture and substance containing a detectable amount of fentanyl which the defendant distributed was 40 grams or more (for Count Thirty-Nine), and the mixture and substance containing a detectable amount of cocaine base ("crack") which the defendant distributed was 28 grams or more (for Count Thirty-Five).

**Counts 5, 6, 12, 17, 18, 21, 22, 24, 28, and 30: Distribution of Fentanyl (21 U.S.C. § 841(a)(1), (b)(1)(C)), and Aiding and Abetting (18 U.S.C. § 2)**

To obtain a conviction under 21 U.S.C. § 841(a)(1), (b)(1)(C), the government must prove the following elements beyond a reasonable doubt:

(1) The defendant distributed a mixture or substance containing a controlled substance;

(2) The defendant distributed the controlled substance knowingly or intentionally; and

(3) The controlled substance was fentanyl.

*See* Third Circuit Model Jury Instructions (Criminal) 6.21.841B (Jan. 2024).

## III. <u>STATUTORY MAXIMUM AND MINIMUM PENALTIES</u>

For Counts 1, 25, and 29, charging conspiracy to distribute 400 grams or more of fentanyl, 280 grams or more of cocaine base ("crack"), and cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(C), and attempted possession of 400 grams or more of fentanyl with the intent to distribute and aiding and abetting thereof, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) and 18 U.S.C. §2, the defendant faces up to life imprisonment, with a mandatory minimum of 10 years' imprisonment, a mandatory minimum of 5 years of supervised release up to lifetime supervised release, a $10,000,000 fine, and a $100 special assessment for each count.

For Counts 35 and 39, charging distribution of 40 grams or more of fentanyl and/or 28 grams or more of cocaine base ("crack"), and aiding and abetting thereof, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. §2, the defendant faces up to 40 years' imprisonment, a mandatory minimum of 4 years of supervised release up to lifetime supervised release, a $5,000,000 fine, and a $100 special assessment for each count.

For Counts 5, 6, 12, 17, 18, 21, 22, 24, 28, and 30, charging distribution of fentanyl, and aiding and abetting thereof, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. §2, the defendant faces up to 20 years' imprisonment, a mandatory minimum of 3 years of supervised

release up to lifetime supervised release, a $1,000,000 fine, and a $100 special assessment for each count.

The total permissible statutory maximum and minimum sentence is: A term of imprisonment of life, a mandatory minimum of 10 years' imprisonment, a mandatory minimum 5 years of supervised release up to lifetime supervised release, a fine of up to $50,000,000, and a special assessment of $1,500. Forfeiture of any property that was used or was intended to be used to commit or facilitate the offenses also may be ordered.

## IV. FACTUAL BASIS

Were this case to go to trial, the United States would prove, beyond a reasonable doubt, facts including, but not limited to, the following:

Defendant JAVIER RESTO-BERRIOS, a/k/a "Chicken," and his co-defendants were part of a drug trafficking group that operated primarily on the 3100 block of Weymouth Street, Philadelphia, termed the "Weymouth DTO," and sold fentanyl, cocaine, and crack cocaine. The Weymouth DTO operated from as early as January 2016 through October 2025. Defendant RESTO-BERRIOS worked as a caseworker and street-level drug dealer for the Weymouth DTO between approximately 2016 and October 2025.[1]

The 3100 block of Weymouth Street functioned as an open-air drug market that operated 24 hours a day, 365 days a year, where addicts could come to buy fentanyl, cocaine, and crack cocaine, up and down the block. The Weymouth DTO used multiple occupied and abandoned houses and vacant lots on the block—as well as trash cans, ground drains, cars, tires, and

[1] There were periods of time between 2017 and 2019, and then between 2019 and 2023, where the defendant was incarcerated for state charges and so was not actively working with the DTO on the block. For instance, on February 7, 2018, the defendant pled guilty to charges arising from an arrest on September 21, 2017, was sentenced to 11 to 23 months' imprisonment, altogether serving time in custody between September 2017 and April 2019 for those charges. The defendant was also in custody for an arrest on or about December 16, 2019 through May 2023.

porches—to store small to medium amounts of drugs in easily-accessible places, so they can be procured for buyers who arrive on the block to make drug transactions. The Weymouth DTO also used several off-the-block locations to package and store drugs that are delivered to the block through "reups." Up until August 2025, the Weymouth DTO used 6217 Tackawanna Street, in Philadelphia, as a bag-house for fentanyl, and it used a garage at 3326 Rorer Street, in Philadelphia, as a packaging and storage center for crack cocaine and powder cocaine. The Weymouth DTO also used a particular lot on the block, at 3153 Weymouth Street, as a meeting place, stash location, and location to cook crack cocaine.

The Weymouth DTO sold drugs all along the block of 3100 Weymouth Street, as well as on neighboring or nearby block corners. Specifically, the group's operations also extended to include the corner of F Street and Clementine Street, the corner of E Street and Wishart Street, and 3000 Potter Street. On 3100 Weymouth Street itself, DTO members—and customers—distinguished between the "top" of the block, closer to Allegheny Avenue, and the "bottom" of the block, closer to Clearfield Street. At the top of the block, the Weymouth DTO primarily sold fentanyl, powder cocaine and sometimes crack cocaine. At the bottom of the block, the Weymouth DTO primarily sold crack cocaine, although fentanyl and powder cocaine were also available. If a customer went to the top or bottom of the block looking for a type or quantity of controlled substance that a street-dealer at that location did not have on hand, the street-dealer would coordinate with other street-dealers and case workers along the block to try to meet the customer's order.

The Weymouth DTO was an organized drug operation with an established schedule of "shifts" for caseworkers and street dealers. The schedule was distributed by leaders of the Weymouth DTO and it set forth which member of the group would be working on a given day of

the week and during what time block. Weymouth DTO members would not always personally work their shift but rather they recruited other members to work the shift for them. In turn, the Weymouth DTO member originally assigned to a particular shift would be given a portion of the drug proceeds from that shift and the DTO member that was not originally assigned would get a portion of the proceeds from the shift. The Weymouth DTO also had well defined roles. These roles included the owner of the block, leaders, case workers, street-level dealers or trappers, runners or reup coordinators, lookouts, enforcers, and packaging or stash-house operators.

Defendant RESTO-BERRIOS was a caseworker and street-level dealer for the Weymouth DTO on the 3100 block of Weymouth Street. Defendant RESTO-BERRIOS had a regular presence on the block, often working on a daily basis for the DTO selling drugs, coordinating drug supply deliveries to the block, coordinating deliveries of drug proceeds to stash locations, and otherwise furthering its activities. By 2024, the defendant had become of the DTO's most industrious and reliable shift workers, serving effectively as a captain of street operations on many occasions, through which he would direct buyers to sellers, ensure sufficient quantities of drugs were on hand, and field calls from other DTO workers.

The Weymouth DTO sold controlled substances in differing quantities. The DTO would sometimes sell a single bag of fentanyl/heroin to a customer, containing anywhere from 0.015 to 0.03 grams of fentanyl/heroin, at a price of approximately $5 per packet. Similarly, the Weymouth DTO would sometimes sell a single "trash can" or flip-top container of cocaine base ("crack") to a user, containing approximately 0.1 grams of crack, at a price of approximately $5 per flip top. The Weymouth DTO would also sell fentanyl/heroin in "bundles." Bundles were individual bags of fentanyl/heroin that would be grouped together using a rubber band, at a price ranging from $55 to $70 per bundle. A bundle usually contained between 12 and 14 bags of

fentanyl/heroin. Thus, it was typical for a bundle of fentanyl/heroin to contain a total 0.42 grams of fentanyl/heroin.

In 2025, including during the period time in which defendant RESTO-BERRIOS was a caseworker and street-level dealer for the Weymouth DTO, it was typical for the DTO to sell between 100 and 240 bundles of fentanyl/heroin a day, totaling between 42 and 100 grams of fentanyl/heroin, and roughly 10 grams of crack cocaine a day. These sales were made from the 3100 block of Weymouth Street and certain surrounding areas that the DTO also controlled.

The Weymouth DTO also used "stamps" to brand their fentanyl/heroin product. Stamps were markings on the packet of fentanyl/heroin to denote a certain brand. Stamps used by the Weymouth DTO during the period of defendant RESTO-BERRIOS's involvement included "SHAMA," "RIFLAY," "GRINCH," "Ric Flair," and "FRANK WHITE," among others.

Defendant RESTO-BERRIOS regularly made direct hand-to-hand sales for the DTO on the 3100 block of Weymouth Street. During the 2024 through 2025 period, the defendant also lived on the block, at 3140 Weymouth Street, which is where several of his sales took place. Throughout the course of the FBI's investigation, he made twelve controlled buys to FBI confidential sources, as detailed below.

On December 2, 2024, defendant RESTO-BERRIOS sold ten bundles containing a total of 154 packets of "SHAMA"-stamped fentanyl to an FBI confidential human source on the 3100 block of Weymouth Street.

On December 19, 2024, defendant RESTO-BERRIOS, along with co-defendant JOSE SANTANA-GONZALEZ, completed the sale of five bundles containing a total of 70 packets of "SHAMA"-stamped fentanyl to an FBI confidential human source on the 3100 block of

Weymouth Street. The total weight for the substance and mixture containing a detectable amount of fentanyl was approximately 2.46 grams.

On February 24, 2025, defendant RESTO-BERRIOS coordinated with co-defendant RICHARD CARTAGENA a/k/a "Richie" and Co-Conspirator 18 to complete the sale of 30 bundles containing a total of 420 packets of "RIFLAY"-stamped fentanyl to an FBI confidential human source on the 3100 block of Weymouth Street. The total weight for the substance and mixture containing a detectable amount of fentanyl was approximately 10.6 grams.

On March 20, 2025, defendant RESTO-BERRIOS sold 18 bundles containing a total of 252 packets of "RIFLAY"-stamped fentanyl to an FBI confidential human source on the 3100 block of Weymouth Street. The total weight for the substance and mixture containing a detectable amount of fentanyl was approximately 7.75 grams.

On March 29, 2025, defendant RESTO-BERRIOS sold 15 bundles containing a total of 210 packets of "RIFLAY"-stamped fentanyl to an FBI confidential human source on the 3100 block of Weymouth Street. The total weight for the substance and mixture containing a detectable amount of fentanyl was approximately 5.89 grams.

On April 14, 2025, defendant RESTO-BERRIOS sold 18 bundles containing a total of 252 packets of "RIFLAY"-stamped fentanyl to an FBI confidential human source on the 3100 block of Weymouth Street. The total weight for the substance and mixture containing a detectable amount of fentanyl was approximately 7.87 grams.

On April 18, 2025, defendant RESTO-BERRIOS sold 20 bundles containing a total of 280 packets of "RIFLAY"-stamped fentanyl to an FBI confidential human source on the 3100 block of Weymouth Street. The total weight for the substance and mixture containing a detectable amount of fentanyl was approximately 8.71 grams. Defendant RESTO-BERRIOS also

distributed two packets of "CHECK OUT"-stamped fentanyl to the FBI confidential human source as a sample.

On May 14, 2025, defendant RESTO-BERRIOS sold 20 bundles containing a total of 280 packets of "RIFLAY"-stamped fentanyl 10 bundles containing a total of 160 packets of "GRINCH"-stamped fentanyl to an FBI confidential human source on the 3100 block of Weymouth Street. The total weight for the substance and mixture containing a detectable amount of fentanyl was approximately 17.49 grams. Defendant RESTO-BERRIOS also sold 28 orange flip-top containers of crack cocaine, weighing approximately 2.41 grams, to the FBI confidential human source.

On June 3, 2025, defendant RESTO-BERRIOS sold 10 bundles containing a total of 160 packets of "GRINCH"-stamped fentanyl and 25 bundles containing a total of 350 packets of "RIFLAY"-stamped fentanyl to an FBI confidential human source on the 3100 block of Weymouth Street. The total weight for the substance and mixture containing a detectable amount of fentanyl was approximately 19.11 grams.

On June 25, 2025, defendant RESTO-BERRIOS, along with co-defendant KELVIN AGUAYO-GARCIA, completed the sale of 57 bundles containing a total of 902 packets of "GRINCH"-stamped fentanyl to an FBI confidential human source on the 3100 block of Weymouth Street. The total weight for the substance and mixture containing a detectable amount of fentanyl was approximately 37.4 grams.

On August 12, 2025, defendant RESTO-BERRIOS, along with co-defendant KELVIN AGUAYO-GARCIA, completed the sale of 43 bundles containing a total of 687 packets of "GRINCH"-stamped fentanyl and 10 bundles containing a total of 141 packets of "Ric Flair"-stamped fentanyl to an FBI confidential human source on the 3100 block of Weymouth Street.

The total weight for the substance and mixture containing a detectable amount of fentanyl was approximately 39.12 grams. Defendant RESTO-BERRIOS and KELVIN AGUAYO-GARCIA also sold 420 flip-top containers of crack cocaine, weighing approximately 48.2 grams, to the FBI confidential human source.

On September 11, 2025, defendant RESTO-BERRIOS sold 25 bundles containing a total of 350 packets of "FRANK WHITE"-stamped fentanyl to an FBI confidential human source on the 3100 block of Weymouth Street. The total weight for the substance and mixture containing a detectable amount of fentanyl was approximately 11.27 grams.

In addition to regularly engaging in hand-to-hand transactions on the block, defendant RESTO-BERRIOS tried to receive large parcels of bulk fentanyl for the DTO on at least two occasions. On May 16, 2025, he attempted to receive a UPS parcel containing approximately 449 grams of fentanyl with the intent to distribute the fentanyl on the 3100 block of Weymouth Street. On June 12, 2025, he attempted to receive a USPS parcel containing approximately 485 grams of fentanyl with the intent to distribute the fentanyl on the 3100 block of Weymouth Street. A narcotics expert would testify that these amounts are, in his/her opinion, consistent with distribution and not personal use.

Defendant RESTO-BERRIOS was the subject of a wiretap order in this investigation, through which he was recorded on numerous phone calls coordinating with runners, caseworkers, and street dealers. Between May 15, 2025 and July 3, 2025, defendant RESTO-BERRIOS was recorded on the wire discussing who would be working daily shifts, directing or fielding requests for more bundles of fentanyl or more quantities of cocaine and crack cocaine to be brought to the block or to a shift-worker, and coordinating the delivery of drug proceeds at the end of shifts. He would make inquiries of recent dealers as to where they may have deposited

left-over stashes of controlled substances, the volumes of sales over the day, and the delivery of "tickets" or drug proceeds to the proper collector. He would also make sure that the DTO's surrounding blocks had sufficient workers. In one of the calls with KELVIN AGUAYO-GARCIA, defendant RESTO-BERRIOS discussed bringing a "stick" out, referring to a firearm, to protect the DTO.

Although the precise amount of drugs attributable to this defendant are difficult to ascertain, the government and defendant have agreed and stipulated in the plea agreement that at 90,000 kilograms or more of converted drug weight in furtherance of the criminal activity jointly undertaken by the defendant and co-conspirators was within the scope of the defendant's agreement and was reasonably foreseeable to the defendant in connection with the conspiracy, and that the defendant's Guideline range should be calculated based on this amount pursuant to USSG § 1B1.3.

The United States respectfully submits that this summary of evidence provides a factual basis for the guilty plea to the indictment.

Respectfully submitted,

DAVID METCALF
United States Attorney

/s/ *Sara A. Solow*
Sara A. Solow
Jason D. Grenell
Robert J. Livermore
Edward D. Penetar
Assistant United States Attorneys

DATE: July 24, 2026

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Guilty Plea Memorandum has been served on the following counsel for the defendant via e-mail on this date:

Heather J. Mattes, Esquire
105 South High Street, 3rd Floor
West Chester, PA 19382
hjm@hjmattes.com

/s/ *Sara A. Solow*
Sara A. Solow
Assistant United States Attorney

DATE: July 24, 2026